UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 14-193-DLB**

**JIMEY LLOYD COX**                                                          **PLAINTIFF**

vs.                 **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                       **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Jimey Lloyd Cox brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed his application for disability insurance benefits on August 12, 2012, alleging disability beginning on August 3, 2011.  (Tr. 133-39).  Plaintiff's claim was denied initially (Tr. 88), and again on reconsideration (Tr. 93).  Administrative Law Judge (ALJ) Tommye C. Magnus held a hearing on March 26, 2013, and on June 26, 2013, denied Plaintiff's claim.  (Tr. 14-25).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 8, 2014.  (Tr. 6-9).  This appeal followed, and the parties' cross-motions for summary judgment are now ripe for review.  (Docs. 12-1, 13).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.  The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity

2

since August 3, 2011, the alleged onset date. (Tr. 19). At Step 2, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with possible diabetic neuropathy, degenerative disc disease of the lumbar spine, status-post lumbar strain, and left-sided carpal tunnel syndrome. (*Id.*). After considering the four broad functional areas in Section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), the ALJ determined that Plaintiff's anxiety and depression resulted in nonsevere mental impairments. (*Id.*). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

At Step 4, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform "light work" with the following limitations:

> No more than frequent balancing and no more than occasional stooping, kneeling, crawling, crouching or climbing of ramps or stairs. In addition, the claimant must never climb ropes, ladders or scaffolds. Lastly, the work must call for no concentrated exposure to vibration and no more than frequent handling or fingering with the upper left extremity.

(Tr. 22).

After determining that Plaintiff was unable to perform any past relevant work, the ALJ proceeded to the final step of the sequential analysis. At Step 5, the ALJ found that Plaintiff was capable of performing a significant number of jobs in the national and regional economy; specifically, a laundry folder (4,600 regionally/88,000 nationally), a textile checker (2,300 regionally/130,700 nationally), and a vending machine attendant (1,400 regionally/156,500 nationally). (Tr. 24). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. *Id.*

**C.     Analysis**

Plaintiff raises three issues on appeal: (1) the ALJ failed to properly consider the medical evidence in the record, (2) the ALJ improperly weighed his credibility; and (3) the ALJ erred in finding that his mental impairment was nonsevere.

**1.     The ALJ properly weighed the medical evidence in the record**

Plaintiff asserts that the ALJ "acted as h[is] own medical expert," by failing to justify his rational for disregarding Dr. Alison Iser's opinion. (Doc. 12-1 at 7). Plaintiff contends that the ALJ's RFC is therefore inaccurate. (*Id.* at 9). Plaintiff makes no effort to point out for the Court which part of Dr. Iser's report the ALJ improperly rejected, but the Court will review the record for substantial evidence nonetheless.

It is the ALJ's duty to assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). In making that assessment, no single medical opinion is conclusive. *See* 20 C.F.R. § 404.1527(d)(2). "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)). But unlike opinions from a treating source, opinions from nontreating sources are never assessed for controlling weight. *Id.* at 376. "The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)).

Dr. Iser performed an independent medical exam on Plaintiff in June 2012. (Tr. 362-65). Plaintiff does not suggest, nor does the evidence support, that Dr. Iser is a Treating physician. Dr. Iser reported that Plaintiff had 5/5 strength in his bilateral lower extremities

with the exception of his right extensor hallucis longus (foot). (Tr. 362). Plaintiff had an exaggerated slow shuffling gait in which he walked on his heels, was unable to walk on his toes, and fell to the ground when he attempted to squat. (*Id.*). He had a negative straight leg raise test, but was positive on the right side for pain. (*Id.*). Dr. Iser ultimately opined that Plaintiff was unable to perform squatting, bending and stooping; had a lift/push/pull limit of 20 pounds; was not to perform repetitive bending and lifting; and should position change as-needed. (Tr. 365). Dr. Iser did not offer an impairment rating because Plaintiff was not at maximum medical improvement, had not been thoroughly evaluated, and had not tried a course of conservative therapy. (*Id.*). She was unable to determine the etiology of Plaintiff's back pain, but opined that if an MRI revealed a nonsurgical issue, her suggested restrictions "may not be necessary." (*Id.*). Dr. Iser noted that Plaintiff's previous low back injury was "resolved." (Tr. 363).

Dr. Iser then submitted a follow-up letter in July 2012 after reviewing additional medical records. (Tr. 366). She determined that Plaintiff "was not straightforward with me about his history of back pain," and reiterated that Plaintiff needed a "new MRI." (*Id.*). Her "assumption" now was that the new MRI would reveal a nonsurgical issue. (Tr. 367). A nonsurgical issue would mean that Plaintiff was at maximum medical improvement. (*Id.*).

The ALJ's RFC finding is consistent with part of Dr. Iser's opinion. Specifically, the ALJ's RFC of light work adequately accounts for Dr. Iser's suggestion that Plaintiff could not lift more than 20 pounds. *See* Social Security Rule 83-10, 1983 WL 31251, at *5 ("The regulations define light work as lifting no more than 20 pounds at a time . . . ."). The ALJ's RFC finding differs from Dr. Iser's opinion insofar as the ALJ found Plaintiff could no more than occasionally stoop, whereas Dr. Iser opined that Plaintiff was unable to stoop.

Further, the ALJ did not include the limitation of no squatting and the position change requirement.

In not accepting part of Dr. Iser's opinion, the ALJ relied on other medical evidence in the record. In March 2012, Dr. David Muffly performed an orthopedic evaluation and reported that Plaintiff could "fully squat but has to hold to rise." (Tr. 379). He concluded that Plaintiff had "full movement of the ankles, knees, and hips," eight to twelve percent impairment of the whole person, and was restricted to lifting 35 pounds. (Tr. 379-80). In April 2012, Dr. Dustin Johnson found that Plaintiff had 5/5 strength in the lower extremities, was able to heel-to-toe and tandem walk without difficulty, and could squat with only a mild decrease in range of motion and pain. (Tr. 327). Based on these findings, Dr. Johnson concluded that Plaintiff could "perform activities involving sitting, standing, handling objects, [and] walking about . . . ." (*Id.*). Finally, in August 2012, state agency physician Dr. Carlos X. Hernandez opined that Plaintiff could sit, stand and/or walk (with normal breaks) six hours in an eight-hour workday, as well as occasionally stoop, kneel, and crouch. (Tr. 78-79).

The ALJ's decision not to accept some of Dr. Iser's suggested restrictions is supported by substantial evidence. First, her proposed restrictions lacked supportability. 20 C.F.R. § 404.1527(c)(3). The ALJ rejected Dr. Iser's suggestion that Plaintiff required position changes as-needed ("sit/stand option") because it was counter to Plaintiff's statement that his previous back strain was "resolved." (Tr. 23, 363, 364). The ALJ also noted that Dr. Iser had requested updated MRI results, and had opined that "restrictions may not be necessary" if those results revealed a nonsurgical issue. (Tr. 23, 365). Furthermore, Dr. Iser's indication that Plaintiff needed a sit/stand option appears to be

based on Plaintiff's subjective complaints that his pain increased from prolonged sitting, standing, and walking–complaints that the ALJ found not credible (Tr. 23, 363). *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (stating an ALJ's decision to give a therapist's opinion little weight was "well-founded" in part because it was based on a claimant's "subjective claims" (citing 20 C.F.R. § 404.1527(c)(3)).

Second, Dr. Iser's restrictions were inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(4). The sit/stand option and no squatting limitation was contrary to Dr. Muffly's assessment that Plaintiff had a full range of motion in his hips, knees, and ankles; could fully squat; and could lift up to 35 pounds. (Tr. 22-23, 379). It was also in conflict with Dr. Johnson's suggestion that Plaintiff could "perform activities involving sitting [and] standing," and had only mild pain from squatting. (Tr. 327). Finally, the ALJ gave "tremendous weight" to Dr. Hernandez's opinion that Plaintiff could sit or stand six hours a day and occasionally stoop, as it was internally consistent with Dr. Muffly's findings. (Tr. 23). Plaintiff has pointed to no err in how the ALJ weighed the available medical evidence, or how the ALJ formulated his RFC. For all of these reasons, Plaintiff's first argument fails.

### 2. Substantial evidence supports the ALJ's credibility determination

Plaintiff next argues that the ALJ "improperly rejected [his] credibility . . . with regard to the extent of his psychological and physical conditions." (Doc. 12-1 at 8). He contends that the ALJ did not make "apparent" his reasons for his credibility determination.

It is proper for an ALJ to consider a claimant's credibility in evaluating his complaints of pain. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* When a claimant's complaints regarding the intensity and persistence of his symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). Inconsistency between a claimant's complaints and the remaining case record supports a finding that a claimant is not credible. *Id.* at 247-48.

Here, substantial evidence supports the ALJ's conclusion that Plaintiff's presentation of pain and limitation was not credible, and contrary to Plaintiff's suggestion, the ALJ stated his reasons for doing so. First, the ALJ noted that the longitudinal evidence and his first-hand observations did not corroborate Plaintiff's claim that he could sit for only ten minutes and walk only 100 feet before he needed to rest. (Tr. 23, 236). For example, Dr. Johnson opined that Plaintiff had normal reflexes and muscle strength, could heel-to-toe and tandem walk, and could squat with just a mild reduction in mobility. (Tr. 22, 327). Dr. Muffly also found that Plaintiff had full range of motion in the hips, knees and ankles. Further, Dr. Hernandez indicated that Plaintiff could sit, stand and/or walk six hours in an eight-hour workday, as well as occasionally stoop, kneel, and crouch. (Tr. 23, 78-79). In sum, the ALJ found no objective medical evidence to substantiate Plaintiff's statements regarding the intensity of his pain and limitations, and Plaintiff has pointed the Court to no such evidence in his appeal. *See McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) ("Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.").

Next, the ALJ pointed to Plaintiff's exaggerated presentation to Dr. Iser. (Tr. 366, Dr. Iser: "[Plaintiff] was not straightforward with me about his history of back pain."); *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (upholding an ALJ's finding that a claimant's testimony was "incredible" in part because a doctor had noted that "[the claimaint] was exaggerating her pain"). Finally, the ALJ considered the fact that Plaintiff demonstrated the ability to work until he was laid off, as opposed to being forced to stop due to a physical impairment. (Tr. 23, 379). Because substantial evidence supports the ALJ's decision that Plaintiff's testimony was not credible, the ALJ was not required to include the Plaintiff's suggested limitations in his RFC and hypothetical question to the VE. *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.").

### 3. The ALJ properly evaluated Plaintiff's mental limitations

Plaintiff suggests that he has a "severe . . . mental impairment that seriously limits his ability to work," and that the ALJ "did not fully address the [his] mental condition." (Doc. 12-1 at 10). Plaintiff makes a limited attempt to develop this argument, merely stating that he "has been treating at Cumberland River Comprehensive Care and suffers from a severe psychological condition which effects his ability to work. He is prescribed celexa and has testified about how his psychological condition effects his ability to do any activities." (*Id.*).

The ALJ determined that Plaintiff's mental impairments of anxiety and depression caused no more than minimal limitations. (Tr. 20). He reached this conclusion after considering the four broad functional areas for evaluating mental disorders as set out in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P. Appendix 1). These four areas include daily living; social functioning; concentration, persistence or pace;

and episodes of decompensation. 20 C.F.R. § 404.1520a(c). The ALJ found that Plaintiff had no more than a mild limitation in the first three categories, and found no episodes of decompensation. (Tr. 20-21). Substantial evidence supports the ALJ's conclusion.

First, the ALJ relied on Plaintiff's own reports, wherein he stated that his ability to care for himself and his son, make meals, and manage money was restricted only by his physical limitations. (Tr. 20, 332-34). He also stated that he enjoys many social activities such as reading, walking, boating, and visiting with family and friends, and has an average ability to get along with authority figures. (Tr. 20, 235-37). The ALJ noted that Plaintiff reported similar activities and abilities to Dr. Timothy Baggs in July 2012. (Tr. 21, 372). The ALJ was required to consider these activities in determining whether Plaintiff was impaired by his mental limitations. 20 C.F.R. §§ 404.1529(c)(3)(I), (c)(4).

Second, the ALJ documented the objective medical evidence. As the ALJ reported, "claimant presented a minimal history of formal mental health treatment, belying the notion of significant mental dysfunction." (Tr. 21). Specifically, in July 2012, Dr. Baggs assessed Plaintiff as having only "very mild psychological distress", "very mild sadness," "very mild despondency," and "very mild depression." (Tr. 371-76). He further suggested that Plaintiff could understand simple instructions, could relate adequately with people in a workplace setting, and would have an average ability to deal with pressures found in normal work settings. (Tr. 375). In August 2012, Dr. Eric Weiner opined that Plaintiff had nonsevere mental limitations that "singly or in combination do not prevent him from performing basic work related activities." (Tr. 73).

Plaintiff did begin a course of treatment at Cumberland River Comprehensive Care. (Tr. 21). But those treatment records reveal that he has an "intact" memory; "good"

attention, concentration, and judgment; is stable; and is showing "some progress." (Tr. 418-19, 471-73). Indeed, in April 2013, Plaintiff reported that he was "doing better." (Tr. 503). The ALJ found Plaintiff's treatment records from Cumberland congruent with his prior medical history and adaptive functioning, and therefore concluded that Plaintiff's mental disorders were nonsevere. (Tr. 21). Because it is supported by substantial evidence, there is no err in the ALJ's finding of a nonsevere mental limitation.

### III. CONCLUSION

For the reasons stated herein, the court concludes that the ALJ's findings were adequately explained and supported by substantial evidence. Accordingly,

(1) The decision of the Commissioner is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**;

(4) A Judgment shall be entered contemporaneously herewith.

This 6th day of August, 2015.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-14-193 Cox MOO.wpd